Lamb, Appellant, *v.* Allegheny County Institution District.

Argued September 29, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Maurice Chaitkin,* with him *C. Roscoe Hoffman,* for appellant.

*Edward G. Bothwell,* First Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 14, 1949:

There are two reasons why plaintiff is not entitled to the specific performance which he is here seeking of a contract for the purchase of land. One is that the contract did not receive the approval of the court required by statute, the other that the action is barred by the statute of limitations.

By the Act of April 23, 1852, P. L. 423, a corporation was created under the title of "The directors of the poor and of the house of employment for the county of Allegheny,"—a name that was changed by the supplementary Act of May 4, 1864, P. L. 760, to "Allegheny County Home". The directors were authorized to purchase, take and hold, any lands within the county, in fee simple or otherwise, and erect thereon suitable buildings for the reception, lodging, maintenance, and employment of the poor within the county. The Home became the owner of a tract of land of 190.88 acres and on January 16, 1930 it gave a sixty days' written option to plaintiff, F. G. Lamb, to purchase this land for the price of $76,352, payable $1,000 upon the acceptance of the option and $25,352 upon the delivery of the deed, a purchase money bond and mortgage to be executed for the balance in the sum of $50,000. On March 14, 1930 plaintiff assigned his rights under the option to Sanford M. Chilcote, who, on that same day, notified the Home in writing that he accepted the option. Later, upon examination of the title, it was found that a portion of the property was subject to the encumbrance of a private right of way and of an old township road which had been abandoned but not vacated. Accordingly a new arrangement was made between the Home and Chilcote, under which the

Home deeded to Chilcote, on April 17, 1930, two portions of the property that were unaffected by the easements,— one consisting of a tract of 145.24 acres which the Home conveyed to Chilcote for a consideration of $58,096 in cash, the other, of a tract of 6.40 acres for a consideration of $256 in cash, or a total conveyance of 151.64 acres for a cash consideration of $58,352. As a result of this transaction there remained in the ownership of the Home 39.24 acres of the original tract. On April 29, 1930 it entered into a written agreement with Chilcote by the terms of which it agreed to sell him these 39.24 acres for the price of $18,001, payable $1.00 upon delivery of the deed, the balance of $18,000 to be secured by a purchase money bond and mortgage. One of the provisions was that, as a condition precedent to the agreement, the Home would procure the formal release of the right of way. On January 21, 1942, Chilcote re-assigned to plaintiff all rights in and to the agreement of January 16, 1930 and on September 13, 1944 he assigned to him all his right, title and interest in and to the agreement of April 29, 1930.

By the Act of June 24, 1937, P. L. 2017, each county was created a district to be known as "............. County Institution District", for the care of indigent persons requiring public care because of physical or mental infirmity. The office of the county poor director was abolished and the functions of such directors transferred to the county commissioners.

Plaintiff has been at all times ready and willing to carry out the purchase agreement for the 39.24 acres but has been unable to obtain title because of the failure of the Home, and later of the Allegheny County Institution District, to obtain a release of the right of way over the property. On May 22, 1946 he brought the present bill in equity to require the Institution District to perform the agreements of January 16, 1930, and April 29, 1930, "or either of them", by conveying to him

the 39.24 acres upon the payment to it of the sum of $1.00 and the delivery of a bond and mortgage for $18,000 (as provided in the agreement of April 29, 1930); if, however, the Institution District should not be successful in obtaining a release of the right of way and the vacation of the old road, then to make such conveyance upon the payment to it of the purchase price less a proper abatement by reason of the deficiency in title. At the trial plaintiff expressed his willingness to pay the entire purchase price of $18,000 in cash instead of by mortgage, and without any diminution because of the encumbrances. The court, however, refused specific performance and dismissed the bill.

The Act of April 28, 1887, P. L. 75, provided that the courts of common pleas should have jurisdiction and were authorized to decree a public or private sale of any poor-house property, at such times and upon such terms, as, in the opinion of the court, might be considered most advantageous to the poor district; such sale was to be decreed upon the petition of the poor directors and was to take place only after the court had made a full and careful investigation and had found that it would be to the advantage of the district that the property should be sold. Neither the agreement of January 16, 1930 nor the agreement of April 29, 1930 was ever presented to the court of common pleas for approval. Plaintiff contends that the Act of 1887 did not make approval by the court mandatory but merely permissible; such an interpretation would render the Act practically unnecessary and meaningless for its obvious purpose was to prevent the poor directors from making a hasty or ill-advised sale of poor-house property and to make certain that a "full and careful investigation" would be made by the court in order to determine whether the sale would be to the advantage of the district. Plaintiff argues that, if such approval was required, it had to be procured, not by him, but by

the Allegheny County Home, and that the latter's own failure, therefore, to obtain the court's approval should not be allowed to serve it as a defense. While it is true that the Act provides for a petition by the directors of the poor, plaintiff might have taken appropriate measures to compel them to file such a petition; in any event it is clear that a valid sale of the property could not be made without the public interest being protected by a court's investigation of the transaction. Plaintiff points to the fact that the Act of June 24, 1937, P. L. 2017, which created the County Institution Districts repealed the Act of 1887 and provided that county commissioners should have the power to sell any property of an institution district, but this change in the law merely meant that thereafter approval by the court would not be necessary; the Act did not operate retroactively to give vitality to agreements made prior to its enactment; the legislature evidently chose to give to county commissioners in charge of institution districts a greater freedom in selling poor-house property than was allowed to directors of the poor under the Act of 1887.

The second reason why plaintiff cannot obtain specific performance is because of the Act of April 22, 1856, P. L. 532, section 6, which provides that no action shall be maintained for a specific performance of any contract for the sale of real estate but within five years after such contract was made. This five year limitation precluded an action by plaintiff after April 29, 1935. Plaintiff seeks to escape this result by reason of a further clause of section 6 which provides for an exception in case there has been in part a substantial performance of the contract; he points to the partial performance of the agreement of January 16, 1930 by the conveyance of two portions of the tract and the payment of consideration therefor. His position in this regard rests upon the theory that that agreement remained in force

and effect even after the new agreement of April 29, 1930 had been entered into. While it is true that the latter contract was intended to take up the threads of the former one and to remedy the situation caused by the inability of the Home to carry out its original obligations it nevertheless is clear that it was a new, distinct, independent contract, entirely complete in itself, which was meant to supersede, and did in fact supersede, the January 16, 1930 agreement. Not only did it not refer in any way to that agreement, but its terms were a complete departure therefrom. Under the January 16, 1930 agreement the tract of 190.88 acres was sold for a consideration of $76,352 or at the rate of $400 per acre, whereas, by the arrangement subsequently entered into, 151.64 acres were conveyed for a price of $58,352 or at the rate of $384.80 an acre, and by the agreement of April 29, 1930, 39.24 acres were to be conveyed for the consideration of $18,001 or at the rate of $458.74 an acre; moreover, the provision for an $18,000 purchase money mortgage constituted an additional change. All the circumstances indicate that the parties intended a novation and that the April 29, 1930 contract was to be the one and only agreement thereafter in force between them. The essentials of a novation have been said to be the displacement and extinction of a former contract, the substitution of a new agreement, a sufficient consideration therefor, and the consent of the parties thereto: *Jones v. Commonwealth Casualty Co.*, 255 Pa. 566, 573, 100 A. 450, 452; *Joseph Melnick Building & Loan Association v. Melnick*, 361 Pa. 328, 336, 64 A. 2d 773, 777; *LeBar v. Patterson*, 123 Pa. Superior Ct. 491, 497, 187 A. 278, 280. All these essentials are here present. It is true that the new contract contained a conditional clause that the Allegheny County Home would procure a formal release of the right of way over the property, and it is also true that ordinarily a conditional contract of novation cannot take effect until the con-

dition is accomplished. The conditional clause in the present instance, however, added nothing to the contract that was not embraced in the obligation of the vendor to convey a good and marketable title. Moreover, plaintiff has not chosen to treat the agreement of April 29, 1930 as voided by reason of the vendor's non-compliance with the condition attached to it, but, on the contrary he is now seeking to have it specifically performed, and at the trial he expressly waived performance of the condition. Since the April 29, 1930 contract undoubtedly superseded and extinguished the January 16, 1930 contract, and since there was no partial performance of the April 29, 1930 agreement, it follows that the present action is barred by the five year limitation prescribed by the Act of 1856.

Decree affirmed at the cost of appellant.