344 A.2d 837

**CHATHAM COMMUNICATIONS, INC., a corporation**

v.

**GENERAL PRESS CORPORATION, a corporation, Appellant.**

Supreme Court of Pennsylvania.

Oct. 3, 1975.

James T. Carney, David K. McMullin, Pittsburgh, for appellant.

Leonard A. Mazer, Pittsburgh, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

NIX, Justice.

This is an appeal from a decision of the Court of Common Pleas in equity, where the Chancellor, affirmed by the court en banc, restrained appellant from enforcing its judgment by attaching Chatham Communications' bank account. The Chancellor found the existence of an agreement between the parties whereby General Press would not execute on its judgment if Chatham made periodic installment payments on account of the sum due. General Press appeals from the decision of the court below.

### I.

### *Motion to Quash Appeal*

Initially we must consider appellee's motion to quash this action on the grounds that this appeal was taken from the decree nisi entered by the Chancellor and is therefore interlocutory. We cannot agree. A review of the record reveals that although there has not been strict adherence with our procedural rules, there has been substantial compliance and a motion to quash is not justified. On January 29, 1973, the Chancellor entered an order entitled "Preliminary Injunction or Decree Nisi." This novel caption was explained by the Chancellor in his opinion which accompanied it:

"The hearing on this request for a preliminary injunction embraced all of the evidence which would be available relating to the issue involved and further hearing would seem unnecessary, but, of course, the parties are not precluded from the right of a final hearing if desired, or they may in the alternative con-

strue this preliminary injunction, as a decree nisi and take exceptions thereto, and thus be in a position to argue legal points just as would be done after final hearing."

■ Thus, the appellant was given the option to treat the ruling of January 29th as an order granting a preliminary injunction and appeal directly to this Court from that order pursuant to the Act of February 14, 1866, P.L. 28, § 1 and the Appellate Court Jurisdiction Act, 1970, July 31, P.L. 673, No. 223, art. V, § 501(a), 17 P.S. § 211.501(a). However appellant apparently agreed with the Chancellor that an additional evidentiary hearing was unnecessary and elected to treat the Chancellor's action as a decree nisi. Appellant thereupon filed exceptions and also amended exceptions which were both subsequently dismissed by the court en banc on December 6, 1973.[1] It is that decree of December 6th from which this appeal was taken on January 3, 1974, pursuant to the Appellate Court Jurisdiction Act, *supra*, § 202(4). It is also apparent that the decree of December 6th is a final one implicitly affirming the decree nisi. Thus, we reject appellee's contention that this was an improper appeal from an interlocutory order. While appellant, in his answer to the Motion to Quash, suggests that the appeal is from the order of January 29, 1973, it is apparent that his intention was to appeal from that order after its affirmance by the decree of December 6, 1973.[2]

---

1. The decree of December 6, 1973, provided:
 "*DECREE*
 AND NOW, this 6th day of December, 1973, it is ordered, adjudged and decreed that defendant's exceptions be and are hereby dismissed."

2. This error was probably occasioned by the court's failure in the December 6th order after dismissing exceptions to affirm the decree nisi and make it final.

## II.

### Merits

The first assignment of error is that the Chancellor erred in finding an agreement wherein General Press had agreed to refrain from enforcing its judgment. Appellants contends that there was no meeting of the minds between the parties. Additionally, General Press asserts the absence of legal consideration to support any such agreement. We do not have to consider the question of whether the parties made an agreement in view of our disposition of the second assignment of error.

The Chancellor found that in February 1972 General Press obtained a default judgment against Chatham Communications in the amount of $2,133.78 but as of September of that year had not received satisfaction. Sometime in September 1972 David McMullin, Esquire, attorney for General Press, attempted to schedule a deposition of the President of Chatham for the purpose of discovering the presence of Chatham's assets. Pa.R.C.P. 3117. Shortly thereafter Chatham, through its attorney, Albert Feczko, Esquire, contacted Mr. McMullin and indicated that they would make a $400,000 payment on account of the judgment and would continue to make periodic installment payments if General Press would agree not to execute on its judgment. A payment of $400.00 was made by Chatham and accepted by General Press in the early part of October 1972. A second check in the amount of $400.00 was accepted at the end of November. General Press further responded by postponing the taking of depositions indefinitely. On or about January 11, 1973, General Press executed its judgment by attaching the bank account of Chatham. It was at this point that this suit in equity was instituted seeking to restrain appellant from proceeding with this execution.

██ It is fundamental law that the findings of fact of a Chancellor have the force of a jury's verdict and if supported by adequate evidence and affirmed by the court en banc, will not be disturbed on appeal. E. g. *Snow v. Corsica Construction Company*, 459 Pa. 528, 329 A.2d 887 (1974); *Berkowitz v. Mayflower*, 455 Pa. 531, 317 A.2d 584 (1974); *Anthony v. Perose*, 455 Pa. 233, 312 A.2d 360 (1973); *Lewkowicz v. Blumish*, 442 Pa. 369, 275 A.2d 69 (1971); *Yuhas v. Schmidt*, 434 Pa. 447, 258 A.2d 616 (1969).

In this instance after a thorough review of the evidence presented below, we find that we cannot affirm the findings of fact made by the Chancellor. There is nothing in the testimony to support the finding that there was a promise by the debtor, Chatham Communications, to forego institution of bankruptcy proceedings as consideration for a promise by General Press to postpone execution on its judgment. To the contrary, the only counter-promise made by Chatham, was the agreement to liquidate the judgment in periodic payments.

 It is axiomatic that the performance of an act which one party is legally bound to render to the other party is not legal consideration. Payment of a valid judgment is not consideration for an agreement, for the plain reason that there is no benefit to the creditor who is entitled to the whole nor a detriment to the debtor who was already legally obligated to liquidate this indebtedness. *Crown v. Cole*, 211 Pa.Super. 388, 236 A.2d 532 (1967); 1 Corbin, Contracts, § 143 (1963); Restatement of Contracts, § 76 (1936); 1 Williston on Contracts, § 120 (3d ed. 1957); Cf. *Blaisdell Filtration Co. v. Bayard & Co.*, 311 Pa. 6, 166 A. 234 (1933).

██ While we recognize the exception to this general rule that the giving up by an insolvent debtor of his right to be discharged of his debts as a bankrupt, furnishes legal consideration for a return promise by his

creditor; 1 Williston on Contracts, § 120, *supra; Melroy v. Kemmerer,* 218 Pa. 381, 384, 67 A. 699, 700 (1907); *Rosenblum v. Edwards,* 137 Pa.Super. 33, 8 A.2d 468 (1939) ; *Brush Hat Mfg. Co. v. Abeles,* 45 Pa.Super. 243, (1911), the record in this case fails to support a finding that such was in fact the case here. The only reference to the possibility of bankruptcy appears in the testimony of Joseph J. Bernstein, Esquire, attorney for another judgment creditor of Chatham's:

> "Q. [Attorney for plaintiff-appellee]
>
> Do you know anything about the agreement being entered into between Mr. Feczko and Mr. McMullin with reference to the case against the Chatham Communications on behalf of the Chamber of Commerce?
>
> A. [Mr. Bernstein]
>
> No, I did not even know who the creditors were. I only knew Mr. McMullin represented another creditor who was chasing Chatham Communications, and *Mr. Feczko represented to me* that he had made a similar arrangement with Mr. McMullin to ward off any executions or receiverships." (Emphasis added)

This testimony however, does not address itself to the crucial inquiry of whether Mr. McMullin did in fact know of the possibility of Chatham's bankruptcy at the time any agreement was elicited from him on behalf of General Press.[3]

---

**3.** There was also the following reference to receivership by Mr. Thomas E. Morgan, President of Chatham Communications:

"Q. [Attorney for plaintiff-appellee]
 You think carefully before you answer this. Did you ever discuss going into bankruptcy with Mr. Feczko a long time ago? Answer that 'Yes' or 'No.'
 A. [Mr. Morgan]
 Yes.
 Q. And you refused to go into bankruptcy, did you not?
 A. That's correct.
 Q. Because you said you always wanted to pay your obligations, is that correct?
 A. That's right."

Most damaging to appellee's present position was the testimony of their attorney and agent who actually participated in the negotiations of the alleged contract. While Mr. Feczko testified at great lengths regarding his conversations with Mr. McMullin, agent and attorney for General Press, he at no point suggested that Chatham's promise to forego bankruptcy was the consideration offered. To the contrary his testimony would suggest that the periodic payments of the balance due was what in fact was offered to General Press.

"Q [Attorney for plaintiff-appellee]

Did you and Mr. McMullin enter into an agreement as to postponing any further action upon making payments?

A Yes, we did.

Q What was the agreement and, if you recall, how were the payments to be made?

A The agreement, as I recall, the first was in September

Q Of what year?

Q And the amount of those payments was what?

A $400.00 each.

Q Was that in accordance with the agreement and

A—that there would be a payment of $400.00 to General Press and they would do nothing further and they would agree to accept a second payment of $400.00 at the end of November, 1972 and take no further action.

Q Did you make those payments?

It is clear that this does not support the finding that a promise to forego bankruptcy was offered to General Press. In fact, this statement seems to contradict appellee's present position since it indicates an intention to refrain from entering into bankruptcy under any circumstances.

A We made a payment some time early October, late September, '72. We made a payment late November, 1972.

understanding you had with Mr. McMullin in order to forebear proceeding with any further action in this case?

A Right.

Q When was the next payment you made?

A The next payment, according to the agreement, would be 30 days or the end of December. That payment was not made at the end of December because Mr. McMullin on behalf of another of his clients, the Chamber of Commerce, had issued an attachment of execution against the bank account.

. . ."

We are therefore constrained to conclude that even if the negotiations between Chatham Communications and General Press did result in an agreement by General Press to forego proceedings in execution of its judgment, Chatham failed to establish in this record that its promise to forego bankruptcy was the consideration. Significantly, although the Chancellor found this as a finding of fact, he failed in his opinion to point to any portion of the testimony to support this finding.

▆▆ Additionally, the court entered an order permitting Chatham Communications to set-off the sum of $803.50 against the balance of the debt owed General Press. This amount represents counsel fees incurred by Chatham in this litigation. It is clear under our law that this was also error.

" 'Over and over again we have decided there can be no recovery for counsel fees from the adverse party to a cause, in the absence of express statutory allowance of the same . . . ', *Smith v. Equitable Trust Co.*, 215 Pa. 413, 417, 64 A. 591, 592 (1906), or clear agreement by the parties, *Fidelity-Philadelphia Trust Com-*

*pany v. Philadelphia Transportation Company*, 404 Pa. 541, 548, 173 A.2d 109, 113 (1961), or some other established exception, see *Hempstead v. Meadville Theological School*, 286 Pa. 493, 134 A. 103, 49 A.L.R. 1145 (1926)." *Shapiro v. Magaziner*, 418 Pa. 278, 280, 210 A.2d 890, 892 (1965).

*Corace v. Balint, et al.*, 418 Pa. 262, 271, 210 A.2d 882, 886–7 (1965).[4]

The Decree of the court below is reversed and the matter is remanded for further proceedings consistent herewith.

Each party to bear own costs.

JONES, C. J., took no part in the consideration or decision of this case.

POMEROY, J., did not participate in the decision of this case.

---

**4.** *Barnett v. Reed*, 51 Pa. 190 (1865) which allows counsel fees in a tort action for malicious abuse of process is clearly inapposite and offers no support for appellee's position.