399 A.2d 408

Edward G. BOGOSIAN and Kathy A. Bogosian

v.

FOERDERER TRACT COMMITTEE, INC.

In the Matter of FOERDERER TRACT COMMITTEE, INC.

Appeals of FIRST PENNSYLVANIA BANK N. A.

Superior Court of Pennsylvania.

Argued Sept. 12, 1978.

Decided Feb. 16, 1979.

Reargument Denied April 9, 1979.

86 
 

 

J. Dennis Faucher, Philadelphia, for appellant.

Marvin L. Wilenzik, Norristown, for appellee, Sandra S. Newman.

No appearance entered nor brief filed for appellees, Charles and Norma Ferrante, George and Linda Familgio; John T. and Georgia Biezup, Eagson Corp., Tredmont Development Corp. and Edward G. and Kathy A. Bogosian.

Before CERCONE, SPAETH and LIPEZ, JJ.

CERCONE, Judge:

The two appeals before us were consolidated for our consideration. The first appeal is from a Decree Nisi en-

tered by the Court of Common Pleas of Montgomery County on July 28, 1977, appointing a liquidating receiver with the power and duty to dispose of real estate known as the Foerderer Tract. The second appeal is from the final decree of the lower court, entered on November 21, 1977, affirming the Decree Nisi after exceptions had been filed and argument heard by the court en banc.

Preliminarily, we quash the first appeal from the Decree Nisi, docketed at No. 2255 October Term, 1977. A decree nisi is a non-appealable interlocutory order. Such an adjudication is filed in order to give the parties an opportunity to object and reargue the issues. The right of appeal then lies from the final decree entered by the court. *Patrick & Wilkins Co. v. Adams*, 456 Pa. 566, 322 A.2d 341 (1974); *Lafayette Radio Electronics Corp. of Monroeville v. Jonnet Enterprises, Inc.*, 435 Pa. 49, 255 A.2d 533 (1969); *Cooney v. Pa. Osteopathics Assoc.*, 434 Pa. 358, 253 A.2d 256 (1969); *Sessa v. Melnick*, 420 Pa. 257, 216 A.2d 56 (1966). Since appellant also appealed from the final decree of November 21, 1977, the quashing of the first appeal does not affect our disposition of this case. See *Chatham Communications, Inc. v. General Press Corp.*, 463 Pa. 292, 344 A.2d 837 (1975). We affirm the final decree of the lower court with modification.

The pertinent facts that lead to this appeal are as follows: The real estate which is the subject of this appeal is known as the Foerderer Tract. The Foerderer Tract Committee, Inc. was established as a non-profit corporation for the purpose of purchasing this tract from Villanova University. A mortgage and mortgage note exist in favor of First Pennsylvania Bank from the Foerderer Tract Committee, Inc., (FTC), upon which FTC defaulted. The Bank issued a Writ of Execution and sale of the real estate was scheduled for November 27, 1974. However, prior to the date of the scheduled sheriff's sale, the Bogosians, the appellees herein, filed a petition for the appointment of a receiver pendente lite for the assets of the Foerderer Tract Committee pursuant to the Domestic Nonprofit Corporation Law, section

7982.[1] They claimed they were creditors of the FTC and that the mortgaged premises were part of the assets which were being wasted and required receivership protections. The judicial sale of the real estate was stayed and a temporary receiver was appointed by orders of the lower court in late November, 1974. No appeal was filed from these orders.

In February, 1975, the Bank filed a petition for the Abandonment and Termination of the Stay of the Sheriffs' Sale on the grounds that the value of the mortgaged premises was less than the debt secured by the first mortgage. In February, 1976, the Bogosians filed an amended petition for the appointment of a liquidating receiver. Hearings on both the Bank's and the Bogosians' petitions were held and resulted in the decree nisi and final decree, appointing and affirming[2] a liquidating receiver, from which this appeal flows.

Appellant raises four issues on appeal. First whether the lower court erred in appointing a liquidating receiver; second, whether there was sufficient evidence to support the court's conclusion that the fair market value of the real estate was $35,000 per acre; third, whether a liquidating receiver has power to sell real estate free of the bank's first mortgage lien; fourth, whether a liquidating receiver has power to sell real estate free of liens and equitable interests.

## I.

In addressing these issues, it is axiomatic that the "findings of fact of a Chancellor have the force of a jury's verdict and if supported by adequate evidence and affirmed by the court en banc, will not be disturbed on appeal." *Chatham Communication, Inc. v. General Press Corp.*, 463 Pa. at 297,

1. Act of November 15, 1972, No. 271, § 7982; 15 Pa.C.S.A. § 7982.

2. In dismissing the exceptions to the decree nisi, the lower court filed an "Opinion Sur Exceptions." The bulk of the opinion is captioned "order," and explains why the exceptions were dismissed. Although this is not the typical final decree filed in compliance with Pa.R.C.P. 1519 that would affirm the decree nisi, we will treat it as such since no objection has been raised.

344 A.2d at 840. In the first issue, appellant questions the propriety of the appointment of a liquidating receiver. The bank's major contention is that there was no reasonable probability that the sale of the real estate would realize more than the amount of the bank's debt plus unpaid real estate taxes. Before deciding on valuation, however, we must look to the general equitable principles governing the appointment of receivers and the lower court's rationale for the appointment in this case.

The appointment of a receiver is within the discretion of the lower court and will not be reversed absent a clear abuse of that discretion. *Northampton National Bank of Easton v. Piscanio*, 475 Pa. 57, 379 A.2d 870 (1977); *McDougall v. Huntingdon & Broad Top R. & C. Co.*, 294 Pa. 108, 117, 143 A. 574 (1928). Receivers may be appointed whenever the chancellor is convinced the right is free from doubt, the loss irreparable with no adequate remedy at law, and the relief sought is necessary. *McDougall v. Huntingdon & Br. T. R. & C. Co.*, 294 Pa. at 117, 143 A. 574. Although it is a drastic remedy, it should be imposed where it is necessary to effectuate equality and justice to all interested. *Id.*, 294 Pa. at 116, 143 A. 594. The appointment of a receiver has been upheld to avoid the situation where junior creditors would otherwise be "frozen out."

The lower court as a result of the hearing, found, as a matter of fact, that there was a reasonable probability that the real estate sale would generate more than the outstanding debts. (R. 66a.) Since there was a probability of such a surplus, the lower court concluded, as a matter of law, that the equitable way to distribute the excess funds would be through a receivership. The authority the lower court relied upon for such appointment also rests in the non-profit corporation law of the Commonwealth which gives the court power to appoint a liquidating receiver. 15 Pa.C.S.A. § 7984.

We agree with the lower court. Not only the equitable principles support the appointment of a liquidating receiver,

but also the statutory authority supports that decision. Section 7984 of the Non-Profit Corporation Law specifically provides:

"Upon the filing of a petition under this subchapter the court shall have all the ordinary powers of a court of equity . . . to appoint a receiver or receivers, pendente lite, with such powers and duties as the court from time to time may direct, and to take such other proceedings as may be requisite to preserve the corporate assets and carry on the business of the corporation until a full hearing can be had."

Furthermore, Section 7985 of the statute confers the additional power of the court to appoint a liquidating receiver "with authority to collect the assets of the corporation . . [and] subject to the order of the court, to dispose of all or any part of the assets of the corporation, either at public or private sale." 15 Pa.C.S.A. § 7985. Under these authorities, the court had the power to appoint the receiver and we do not find the lower court abused its discretion by making the appointment.

One additional point is that the Bank failed to appeal from the order of November 22, 1974, that appointed the temporary receiver. Three years passed until litigation sprang up again, during which time the Bank cooperated with the temporary receiver in an attempt to find a purchaser for the Foerderer Tract. These actions on the part of the Bank could be construed as showing acquiescence in the order.

## II.

Appellant's contention that there was no proof that the amount realized at the real estate sale would create a surplus deals directly with the second issue of the sufficiency of evidence on valuation. The lower court concluded that a conservative estimate of the value of the property was $35,000 per acre or $5.46 million dollars. This was based on the evidence of two judicially comparable sales of property. The first was of an auction sale of 11.3 acres of unimproved

R–1 land with public water and sewage which was at one time a part of the Foerderer Tract and is now adjacent to it. It was sold in June, 1977, for $38,000 per acre. The second sale was of 1.3 acres of undeveloped land with water, sewers, and curbs that was also a part of the Foerderer Tract. This sale took place in September, 1976, and brought $43,500.

The Bank argues that, although $35,000 per acre may be a fair appraisal of some of the property in the Foerderer Tract, the $35,000 should not have been multiplied by all 156 acres in the tract since there are large parcels of unsubdivided, unimproved raw land. Moreover, the Bank contends, the testimony of its expert appraiser evidenced comparable sales of the property which would put the total value of the Foerderer Tract at only $2,525,000. The Bank feels this testimony must be given great weight since it was given by an expert; the testimony of the appellees was elicited from the auctioneer of one of the prior sales and a real estate broker.

In questions of valuation, recent sales of comparable properties is a highly desirable method of determining the value of a parcel of land. Am. Institute of Real Estate Appraisers, *The Appraisal of Real Estate*, 119 (1967).

"The basic theory here is that if a similar property located in similar surroundings sold recently at some given price, that price would be relevant in determining the market value of the property being appraised." *In re Condemnation of Tract of Land in Hatfield Twp.*, 23 Pa.Cmwlth. 394, 399, 352 A.2d 230 (1976).

The responsibility for controlling the admissibility of the valuation evidence on comparable sales is on the trial judge whose discretionary actions will not be reversed absent a clear abuse of that discretion. *Comm. v. 108.3 Acres of Land*, 431 Pa. 334, 246 A.2d 124 (1968). In the case before us, the Bank's expert testified to six comparable sales. However, the trial court found that these sales were not judicially comparable sales as were the sales presented on behalf of the receiver. The Bank's comparable sales were of

properties from 2½ to 9½ miles from the Foerderer Tract. Some sales were of residential properties, while the Tract was unimproved land, and the sales which the Bank referred to took place several years prior to the valuation hearing which required the Bank expert to adjust the values according to his judgment as to what the same sale would bring presently. One sale referred to by the Bank was admittedly in a less desirable area, one was of property with contrasting terrain, another overlooked a pet cemetery and kennel. While the property involved in a comparable sale need not be identical to the tract being valued, *Deitch Co. v. Board of Property Assessment*, 417 Pa. 213, 222, 209 A.2d 397 (1965), we find that the evidence presented by appellees of the two sales of unimproved property, contiguous to the Foerderer Tract is justifiably characterized as judicially comparable since the sales occurred closer in time to the valuation hearing and were more proximate and similar to the Tract. For that reason we hold that the lower court did not abuse its discretion in relying on these sales as the judicially comparable ones.

The equities involved in this issue are important. Based on the Bank's outstanding mortgage debt, the Bank contends it should be allowed to proceed with the immediate sheriff's sale of the entire property in one sale since it is in large parcels. If this were done, the Bank's expert testimony on valuation of the property at $2,525,00 might be realized. The Bank contends that allowing a receiver to sell the property in smaller sections would only delay the sale since the present receiver has been unable to find a purchaser during the 3½ years she served as a receiver.

The lower court's finding that the proceeds from the sale of the property in individual lots or smaller parcels would create a surplus of funds after payment of the Bank's mortgage debt that would then be distributed among creditors, tips the balance in favor of allowing the receivership. Otherwise, these creditors would be frozen out if a sheriff's sale of the property in large parcels brought a lesser return. The appellees are such creditors who brought suit to protect their interests and prevent any "freezing out" of their claim.

The lower court was convinced that the property in the Foerderer Tract was of great value and found the equities weighed more heavily in favor of the protection of other creditors than in the interest of the Bank.

 Our holding that the lower court did not abuse its discretion in selecting the appellee's testimony on valuation as the judicially comparable sales also sways the equitable balance to the side of the protection of the other creditors involved in the Foerderer Tract.[3] However, we cannot ignore the more than 3½ years delay that has already occurred due to the failure of the receiver to find a purchaser for any of the lots in the tract. Although we affirm the appointment of the receiver and her authority to sell the lots, as well as the lower court's acceptance of the appellee's testimony on judicially comparable sales, we grant the receiver a period of one year from the publication of this opinion in which to sell the land in the tract. If the receiver fails to find a purchaser or purchasers within that time, her receivership shall terminate and the sheriff's sale of the property will take place as requested by the bank. We are limiting the period in which the receiver may sell in order to avoid an unjust result. It is clear that any delay longer than an additional year will outweigh the contravening equitable principle of protecting other creditors who would be frozen out if the Bank were permitted to proceed with the immediate foreclosure sale of the property.

### III.

Appellant's third contention is that the court had no power to order the receiver's sale of the property free of the first mortgage lien. This argument is without merit since

---

**3.** If the lower court's estimate is correct, the actual dollar amounts involved in our consideration are as follows: The sale of the Foerderer Tract would realize 5.46 million dollars. The Bank's mortgage debt is $2,805,497.14 with, allegedly, $823,959 of interest due. Outstanding real estate taxes are approximately $211,273.92. The year 1978 would generate additional taxes due and fees of the receiver and costs of the sale. However, the value of the Tract would also be appreciating. Taking all these factors into consideration we conclude, along with the lower court, that there is a reasonable possibility that a surplus of funds could be generated by the receiver's sale.

the Opinion of the lower court clearly stated that the first mortgage lien was protected by statute in a judicial sale.[4] (R. 81a.)

 Finally, appellant argues that the lower court had no power to order the receiver's sale free of all other liens prior to the receivership. The Bank bases its argument on Section 7985 of the Nonprofit Corporation Law which provides that:

"Upon a hearing and proof of the issues, after such notice as the court may direct to be given to all parties to the proceeding, and to any other parties in interest designated by the court, the court may appoint a liquidating receiver with authority to collect the assets of the corporation, including all amounts owing to the corporation by members on account of any unpaid portion of the consideration for memberships. Such liquidating receiver shall have authority, subject to the order of the court, to dispose of all or any part of the assets of the corporation, either at public or private sale. The assets of the corporation, or the proceeds resulting from a disposition thereof, shall be applied to the expenses of such liquidation and to the payment of the liabilities of the corporation, and any remaining assets or proceeds shall be distributed by the court in the manner provided by Subchapter E of this chapter (relating to voluntary dissolution and winding up). The order appointing such liquidating receiver shall state his powers and duties. Such powers and duties may be increased or diminished at any time during the proceedings."

It is true, as appellant contends, that the statute does not *expressly* provide that the court may order a receiver's sale free from encumbrances. However, the lower court's ra-

---

4. Act of April 30, 1929, P.L. 874, § 1, 21 P.S. § 651. See also *Reichart v. Reichart*, 49 D. & C.2d 274 (1970). That case did not allow the liquidating receiver's sale but honored the mortgagee's contractual foreclosure right. However, the case is distinguishable in that in *Reichart*, the parties had consented to the appointment of a liquidating receiver and there was no evidence that the sale would create a surplus of funds for distribution to creditors other than the mortgagee.

tionale is that this section of the statute is intended as a procedural process and does not affect the substantive equitable powers of the court.

We agree with the lower court. A receiver's sale is a judicial sale that divests all prior liens on the property absent statutory preservation of the lien. *Highland v. Commonwealth*, 400 Pa. 261, 285, 161 A.2d 390, cert. denied, 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960); *Baird et al. v. Moshannon Coal Mining Co.*, 318 Pa. 63, 178 A. 19 (1935); 45 Am.Jur. § 402; 75 C.J.S. Receivers § 220. "Under the broad equity powers of the court, it can, under proper circumstances, order a sale of property free and divested of liens by transferring the liens to the fund derived from the sale . . ." *Buss Mach. Works et al. v. Watsontown Door and Sash Co.*, 2 F.Supp. 757 (M.D.Pa.1933). However, there must be a reasonable prospect that a surplus will be left to be distributed among general creditors before such a sale will be ordered. *Id.*; 31 P.L.E. Receivers § 19. This is exactly the case before us. There is no indication that the nonprofit corporation law of Pennsylvania intended to limit the equitable powers of courts in this regard. The lower court expected a surplus of funds and therefore had the authority to order the sale free of other incumbrances. There was no error.

Order of the lower court affirmed with modification.