504 A.2d 1279

**Sidney M. DeANGELIS, Appellant,**

v.

**Sandra Schultz NEWMAN, Receiver of the Foerderer Tract Committee, Inc.**

Superior Court of Pennsylvania.

Argued June 5, 1985.

Filed Feb. 10, 1986.

Sidney M. DeAngelis, Norristown, appellant, in pro. per.

Marvin L. Wilenzik, Norristown, for appellee.

Before WICKERSHAM, BROSKY and TAMILIA, JJ.

WICKERSHAM, Judge:

This is an appeal from the orders of the Court of Common Pleas of Montgomery County which sustained preliminary objections to appellant's complaint in equity, dismissed two motions to amend the complaint, and denied appellant's petition for taxable costs.

This case has a long and complicated history. Numerous suits, most of which include the same parties, have been spawned by the underlying facts.[1] The instant suit has already once been before both our court and the supreme court and now returns to us from the trial court. Our

---

1. *See, e.g., In Matter of Foerderer Tract Committee,* 335 Pa.Super. 638, 484 A.2d 815 (1984); *Biezup v. Weber,* 297 Pa.Super. 575, 443 A.2d 368 (1982); *DeAngelis v. Newman,* 296 Pa.Super. 642, 440 A.2d 1261 (1981), *rev'd,* 501 Pa. 144, 460 A.2d 730 (1983); *First Pennsylvania Bank v. Weber,* 283 Pa.Super. 614, 427 A.2d 1195 (1980); *Bogosian v. Foerderer Tract Committee,* 264 Pa.Super. 84, 399 A.2d 408 (1979); *First Pennsylvania Bank N.A. v. Weber,* 240 Pa.Super. 593, 360 A.2d 715 (1976) (en banc).

sincere hope, albeit a futile one, is that its current appearance before this court is its last.

The parties agree on many of the underlying facts. On February 4, 1974, appellant Sidney DeAngelis, an attorney, entered into a written agreement to purchase approximately thirty-six acres of land from a non-profit corporation known as the Foerderer Tract Committee (hereinafter "Committee"). For this land, located in Lower Merion Township, Montgomery County, appellant made a down payment of $65,000.00. The agreement was duly recorded by the Recorder of Deeds. The Foerderer Tract consisted of some 150 acres in total, and was being sold by the Committee to purchasers for home sites. The Tract was encumbered by a first mortgage recorded on November 6, 1972, in favor of First Pennsylvania Bank N.A. (hereinafter "Bank").

Subsequently, the Committee defaulted, the Bank commenced foreclosure proceedings, and a sale of the entire Tract was scheduled for November 27, 1974. Several creditors of the Committee successfully petitioned the court to stay the foreclosure proceedings and to appoint a temporary Receiver for the Committee. On November 22, 1974, appellee Sandra Newman, also an attorney, was appointed temporary Receiver. Both sides filed further petitions, which culminated in an order on July 28, 1977, continuing the stay of the foreclosure proceedings and appointing appellee as the Liquidating Receiver of the assets of the Committee, including the real estate in question. As Receiver, appellee was to dispose of the Tract and accumulate from its sale a fund to be used to pay the creditors of the Committee.

Attempts to sell the Tract from 1975 to 1978 proved unsuccessful, and while our court affirmed the order appointing appellee as receiver on February 16, 1979, we granted appellee a period of one year from the date of publication of our opinion in which to sell the Tract. Should appellee have failed to find a purchaser, her receivership would have terminated and the sheriff's sale promoted by the Bank would have taken place. *Bogosian v. Foerderer Tract Committee*, 264 Pa.Super. 84, 399 A.2d 408 (1979).

Shortly thereafter, appellee located a buyer and in May of 1979, she requested permission of the lower court to sell the entire Tract to Realty Engineering Co. (hereinafter "Realty"). This agreement of sale included the parcel of land which was the subject of appellant's agreement of sale.

Following a hearing, the lower court gave its permission to sell and appellee entered into negotiations with the Bank, whereby she secured from them an assignment of their 1972 mortgage on the Tract in exchange for a promise to pay them a set sum out of the proceeds of the sale to Realty. Then, in order to convey clear and marketable title to Realty, appellee, as mortgagee/owner, commenced a foreclosure proceeding. Accordingly, appellee scheduled a sheriff's and receiver's sale on the entire Tract. After being postponed twice, the sale was held in September of 1979, at which time appellant appeared and made an oral motion to stay the sale. The court dismissed the motion, the sale continued, and appellee was the successful bidder. Following the expiration of the time to file a petition to set aside the sale, the sheriff prepared a proposed schedule of distribution. Appellant filed exceptions to the proposed schedule. After a hearing, the lower court dismissed the exceptions on November 23, 1979. Our court dismissed his subsequent appeal on the grounds that appellant lacked standing to except to the sheriff's schedule of distribution because he was not a lienholder. *See First Pennsylvania Bank v. Weber*, 283 Pa.Super. 614, 427 A.2d 1195 (1980) (per curiam). After the supreme court refused his petition for allowance of appeal, the sale to Realty was scheduled for settlement on April 30, 1980. The Tract was sold at that time or shortly thereafter.

On April 24, 1980, appellant filed a complaint in equity seeking specific performance of his 1974 agreement of sale.[2]

---

**2.** Appellee asserts in her brief that on October 1, 1974, appellant obtained a money judgment against Edwin K. Daly, Jr., the president of the Committee, for the amount of his downpayment. Brief for Appellee at 28. Thus, appellee argues that by obtaining this money judgment, appellant was precluded from obtaining specific performance of the contract. While this argument may contain some merit,

On May 6, 1980, appellee filed preliminary objections to the complaint, raising questions of jurisdiction, demurrer/adequacy, laches, and lack of capacity to sue. Appellant filed an answer to the preliminary objections, but his failure to file a responsive brief within 30 days, as required by former Montgomery County Rule of Civil Procedure 302(d), resulted in a *sua sponte* dismissal of his complaint. On appeal, our court affirmed the dismissal of the complaint. *DeAngelis v. Newman*, 296 Pa.Super. 642, 440 A.2d 1261 (1981) (per curiam). The supreme court granted allocatur and on May 27, 1983, reversed our court and remanded the case to the lower court. 501 Pa. 144, 460 A.2d 730 (1983).

Pursuant to the supreme court's remand on September 29, 1983, the lower court held argument on appellee's preliminary objections, sustained those objections, and once again dismissed the complaint. Four days later, appellant filed a motion to amend the complaint to a breach of contract action, requesting compensatory and punitive damages. Preliminary objections to the motion to amend were filed by appellee, but argument on the motion could not be entertained by the lower court because on October 26, 1983, appellant filed the instant appeal from the court's order dismissing the original complaint. On February 2, 1984, appellant filed in our court a petition to remand for consideration of the motion to amend the complaint, which was granted on February 28, 1984. We retained jurisdiction, pending resolution of the motion to amend. Following a hearing, the lower court, on June 21, 1984, denied appellant's motion to amend his complaint, sustained appellee's

we cannot consider it because we are bound by the record, and our review of the record does not reveal the entry of that judgment. It is black letter law that an appellate court cannot consider anything which is not part of the record in the case; this includes information located only in a party's brief. *McAllonis v. Pryor*, 301 Pa.Super. 473, 448 A.2d 5 (1982).

preliminary objections thereto, and dismissed the motion to amend, and the case is once again before us.[3]

On this appeal, appellant raises the following eight issues:

A. Where an Agreement of Sale to purchase land contains a condition to be satisfied by the Seller, is the Statute of Limitations governing real estate agreements tolled until the satisfaction of the condition?

B. Where a Receiver is appointed to manage some 150 acres of land subject to a first mortgage, then takes an assignment of the first mortgage, then in default, and proceeds to execute upon said mortgage in order to clear title, does the Sheriff's Sale invalidate an Agreement of Sale entered into by the debtor corporation with a purchaser prior to the appointment of the Receiver?

C. Where a purchaser enters into an Agreement of Sale, records it, and notifies the Seller/Receiver that he is ready, willing and able to conclude settlement, but the Receiver sells the identical land to a third party, was it an abuse of discretion for the lower court to dismiss the purchaser's Complaint in Equity seeking specific performance?

D. Where a purchaser enters into an Agreement of Sale, records it, and notifies the Seller/Receiver that he is ready, willing and able to conclude settlement, and tenders the full consideration, was it an abuse of discretion for the lower court to dismiss the Plaintiff's Complaint for lack of capacity to sue, where it appeared that the Seller/Receiver had taken an assignment of a first mortgage and foreclosed thereon in order to clear title for the Purchaser and others?

3. Appellant also filed a bill of costs pursuant to Pa.R.A.P. 2741(3) with the prothonotary after the supreme court remanded this case to the lower court in May of 1983. An amended bill of costs was filed in October of 1983, as was a petition to order payment of taxable costs against appellee. Following argument, the lower court denied the petition on March 6, 1984. Appellant has appealed this order, which is currently pending before our court at No. 982 Philadelphia 1984. Since the record in No. 982 Philadelphia 1984 is also before us at this time, and the parties have already briefed the issue involved in that appeal, for the sake of judicial economy, our court has consolidated both appeals by order dated December 6, 1985, and we will address the issues involved in both appeals at this time.

E. Where a purchaser files a Complaint in Equity seeking specific performance then learns that the Seller/Receiver had sold his land to a third party, and then seeks to amend his Complaint to seek damages, was it an abuse of discretion for the lower court to deny his Motion to Amend?

F. Was it an abuse of discretion for the lower court to dismiss a second Motion to Amend when the Seller showed no prejudice?

G. Was it an abuse of discretion for the lower court to refuse the taking of depositions pursuant to Pa.R.C.P. 1028(c) despite the fact that the Appellee's Preliminary Objections raised questions of fact which were then contradicted by Appellant's Answer to Preliminary Objections?

H. Was it an abuse of discretion for the court below to deny Appellant's Petition for Payment of Taxable Costs pursuant to R.A.P. 2741, and the Act of July 9, 1976, P.L. 586, Section C(3)?

Brief for Appellant at 4.

Upon careful consideration, we find that the answer to the first issue is the key to the following six issues, because if appellant's suit was barred by the statute of limitations, further attempts to amend that complaint, or take depositions concerning that complaint, are irrelevant.

The agreement of sale upon which appellant sued was dated February 4, 1974. The appropriate statute of limitations can be found at 42 Pa.C.S. § 5526: [4]

§ 5526. **Five year limitation**

The following actions and proceedings must be commenced within five years:

(1) An action for revival of a judgment lien on real property.

---

4. This is the amended, and current, version of the statute in effect at the time of appellant's agreement of sale. The previous statute that was in existence in February of 1974 (12 P.S. § 83) also allowed five years to bring an action for specific performance of the sale of real property. *See Lamb v. Allegheny County Institution District,* 363 Pa. 66, 69 A.2d 117 (1949).

(2) An action for specific performance of a contract for sale of real property or for damages for noncompliance therewith.

(3) An action to enforce any equity of redemption or any implied or resulting trust as to real property.

Appellant's action for specific performance was filed on April 24, 1980, more than six years from the date of the agreement of sale. Appellant's motion to amend the complaint was not filed until October of 1983, more than nine years after the signing of the agreement of sale, and four days after the dismissal of the original complaint. Appellant obviously had knowledge of the intention of the Receiver dating from 1975, to sell the real estate in question, as witnessed by his knowledge of and/or participation in other lawsuits concerning the Foerderer Tract. Our court's directive in *Bogosian, supra,* to appellee to sell the land within one year, appellee's agreement of sale to Realty, and her attempts to finally dispose of the Tract in accordance with our directive all antedate the filing of appellant's complaint. Clearly, appellant's suit appears to be time-barred.

Appellant concedes that the five-year statute applies, but argues that the statute did not begin to run on February 4, 1974 because the agreement contained a condition that had not been met. This condition concerned sewerage arrangements for the thirty-six acres contained in the agreement, and appellant asserts that the condition was not met until sometime in 1980. We are not persuaded by this argument. The five-year statute began to run on the date that the agreement of sale *was made,* not at the date of completion of a condition. *See Lamb v. Allegheny County Institution District,* 363 Pa. 66, 69 A.2d 117 (1949). It is axiomatic that the statute of limitations does not begin to run until the cause of action accrues. *Eagan v. U.S. Expansion Bolt Co.,* 322 Pa.Super. 396, 469 A.2d 680 (1983). Such an action accrues only when a party has the right to institute a suit. *Bell v. Brady,* 346 Pa. 666, 31 A.2d 547 (1943). While we note caselaw that states that the

statute does not begin to run against enforcement of a contract depending upon a condition precedent until that condition has been performed, where there is no definite time for doing the act necessarily precedent, the law allows only a reasonable time and the statute begins to run from the expiration of such reasonable time. *Chittenholm v. Giffin*, 357 Pa. 616, 55 A.2d 324 (1947). It is obvious to us that the more than six-year lag between the agreement and the complaint, and the nine-year lag before the amended complaint, especially in view of appellant's awareness of the receivership and the attempts to sell all the Tract, including "his" thirty-six acres, represent the kind of unreasonable delay in bringing suit referred to above.

■ Even if we did not find appellant's suit to be time-barred, we agree with appellee and the lower court that appellant lacked the capacity to bring this action at the time he did, because the sheriff's and receiver's sale in September of 1979 extinguished any rights appellant had in the real estate. Appellant's agreement of sale of February 4, 1974 was subject to a prior mortgage lien of the Bank arising out of a mortgage recorded on November 6, 1972. It is clear that this mortgage lien clearly antedated both the date of appellant's agreement of sale and the date of its recording.

■ Section 7985 of the Non-Profit Corporation Law, 15 Pa.C.S. § 7985, provides for appointment of a receiver. In addition to the specific power given to the receiver by section 7985 to sell or dispose of the assets of the corporation in receivership, there is also a broad equitable power in the court to assist the receiver in carrying out a sale. *Bogosian v. Foerderer Tract Committee, supra.* By approving the sale of the Foerderer Tract to Realty, the lower court expected a surplus of funds and therefore had the authority to order the sale free of other incumbrances. *Id.*

■ The sheriff's and receiver's sale which occurred on September 28, 1979, being pursuant to an order of court and subject to court approval, must be considered a judicial sale.

*See In re Petition of Acchione,* 425 Pa. 23, 227 A.2d 816 (1967). The general rule in Pennsylvania is that judicial sales divest all prior and subsequent liens on the property sold unless such liens are preserved by statute. *Liss v. Medary Homes, Inc.,* 388 Pa. 139, 130 A.2d 137 (1957); *Bogosian v. Foerderer Tract Committee, supra* (a receiver's sale is a judicial sale that divests all prior liens on a property absent the statutory preservation of the lien). Therefore, as a result of the sheriff's and receiver's sale, appellee became the purchaser and title holder of the entire Tract, and any interest which appellant may have had in the property was extinguished. Having no interest whatsoever in the property, after the date of the sheriff's and receiver's sale, appellant lacked standing to bring an action for specific performance in April of 1980, let alone an amended action for damages in October of 1983.

Because we find that appellant's suit was barred by both the statute of limitations and a lack of standing, we need consider only the last of appellant's remaining issues.

After the supreme court reversed our court and remanded this case back to the lower court in May of 1983, appellant filed a bill of costs and later, an amended bill of costs, with the prothonotary. After two letters to appellee seeking payment of these costs went unanswered, appellant filed a petition to order their payment, plus a penalty for their non-payment. Appellee filed an answer thereto, and argument was held on the petition. On March 6, 1984, the lower court denied the petition, which appellant has also appealed. The Judicial Code, at 42 Pa.C.S. § 1726, provides for the establishment of taxable costs. In its exercise of the statutory power granted by section 1726, our supreme court adopted Pa.R.A.P. 2741, which provides in pertinent part:

**Rule 2741. Parties Entitled to Costs**

Except as otherwise provided by law:

\* \* \* \* \* \*

(3) If an order is reversed, modified or vacated with a direction for a new trial, costs shall be taxed against the

appellee, unless otherwise ordered, or unless the appellee causes the matter to be retried below within one year after the remand of the record, in which event the liability for costs shall follow the final judgment on such retrial unless otherwise ordered.

(4) If an order is reversed, without a direction for a new trial, costs shall be taxed against the appellee unless otherwise ordered, or unless the lower court shall determine that the matter is not finally closed between the parties, and the appellee shall bring a new action against the appellant within 30 days after such determination, in which event the liability for costs shall follow the final judgment in such second or other matter relating to the same cause of action.

In his petition for costs, appellant argued that section 3 of the above rule applied, whereas on appeal, he appears to advance section 4 as the more applicable section.[5] Appellee addresses both sections. The lower court's opinion of March 6, 1984 does not reveal why the court denied and dismissed appellant's petition for taxable costs, leaving us in the dark as to what section it considered controlling. Under the facts of this case, however, we find it difficult to hold that either section is controlling.

The order precipitating the petition stated: "The order of the Superior Court is reversed and the case remanded to the lower court for proceedings consistent with this opinion." *DeAngelis v. Newman, supra*, 501 Pa. at 147, 460 A.2d at 731. Clearly there was a reversal. It seems equally clear that there was no direction for a new trial, as described in section 3. It also seems clear, however, that appellee was not in the position upon remand to

---

5. We draw appellant's attention to the fact that he cannot assert new and different grounds for relief on appeal that were not raised in the lower court. *See, e.g., Kemp v. Qualls*, 326 Pa.Super. 319, 473 A.2d 1369 (1984); *Morgan v. Sbarbaro*, 307 Pa.Super. 308, 453 A.2d 598 (1982). It is unclear from the record that both sections were not argued below, however, and since appellee has addressed both sections, and because what section applies is not determinative of the issue, we will address appellant's argument.

bring a new action against appellant within 30 days, as described in section 4. Rather, the reversal by the supreme court was not on the merits, but merely stated that the trial court had erred in automatically dismissing appellant's original complaint on the ground that appellant had failed to file a responsive brief within the time prescribed by local rule. A reversal of that order and subsequent remand meant that the case would be in the same position it was before the lower court's dismissal, i.e., that the complaint was reinstated and that the court would hear argument on appellee's preliminary objections. Certainly appellee was not in a position to bring a "new" action, because the old action, brought by appellant, was still alive. If anything, the remand for "further proceedings" in this case seems to be more closely aligned to a remand for a new trial, than to a close of the action between the parties.

■ Regardless of the section into which appellant's case more appropriately falls, we cannot say that the lower court abused its discretion in denying payment of costs to appellant. *See Gold & Co., Inc. v. Northeast Theater Corp.*, 281 Pa.Super. 69, 421 A.2d 1151 (1980) (allowance of costs in equity is within the court's sound discretion). 42 Pa.C.S. § 1726 states that the prevailing party shall not recover his costs from the unsuccessful litigant where a substantial injustice would result. Costs are meant to follow the final judgment in a case, as a careful reading of Pa.R.A.P. 2741 reveals. Costs relate to the final judgment on the substantive issues, not to unusual procedural questions which are not dispositive of the litigable issues. Furthermore, we note that appellee did not "cause" the appeal resulting in the reversal. Instead, it was a combination of appellant's negligence in failing to file a timely brief and the lower court's *sua sponte* action in dismissing the complaint due to that failure which led to that result. Appellee neither moved for dismissal of the complaint under local rule, nor sought to have the same invoked; the rule was automatically invoked by the court. Because appellee took no action which caused or necessitated the appeal, and then had to

expend time and money defending the court's action on appeal, we cannot find an abuse of discretion in the court's refusal to award costs against appellee at that stage of the litigation.

Order affirmed.