J-A22024-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN R GIECEK | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TERRY GIECEK | : | No. 293 WDA 2024 |

Appeal from the Judgment Entered March 11, 2024
In the Court of Common Pleas of Washington County Civil Division at
No(s):  2018-513

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED: December 6, 2024**

John Giecek ("John") appeals from the judgment entered after the trial court found Terry Giecek ("Terry") breached a contract for the sale of real estate and ordered specific performance, but denied John's request for counsel fees. John challenges the denial of counsel fees. We affirm.

John raised a breach of contract claim against his brother Terry, claiming John had paid Terry money for Terry's interest in shared property. The trial court set forth the following facts following a non-jury trial.

> This dispute involves two (2) brothers and a house that they and a third brother jointly purchased nearly thirty-five years ago. The parties appeared for a non-jury trial on September 27, 2023. Testimony was provided by both parties and their brother, Mark Giecek. After consideration of all evidence and the written arguments of counsel, the court finds the following matters were credibly established at trial.
>
> On March 10, 1989, Ann Brytus, a widow, sold Lot 112 in the Tylerdale Plan of Lots in Canton Township to John, Mark

and Terry Giecek. According to the deed for this purchase, the stated consideration for the transaction was $4,000. However, in reality, the three brothers paid $6,800 to Mrs. Brytus for the property known as "103 Elizabeth Street."

On December 7, 1989, in the kitchen of their parents' home, John Giecek paid Terry and Mark $2,700, each, to buy out their respective interests in the property. The amount paid included sums of money that Terry and Mark contributed towards repairs and improvements to the home. A deed was signed and small green receipts for payment were executed by both Terry and Mark. The deed was not recorded but was mislaid and has never been found.

Terry Giecek denies having ever received payment for his interest. He does not admit that his signature is on the bottom of a receipt offered at trial. This court does not find that Terry Giecek's recollection on this point is accurate. Several reasons drive this conclusion.

First, the receipt, itself, appears aged and has a pre-printed dateline. Such dateline in pre-printed green ink identifies the first two digits of the year as "19."

Second, the trial evidence clearly and convincingly established that John Giecek exercised sole dominion and control over the 103 Elizabeth Street Property. He paid the real estate taxes and property insurance, maintained the property, made improvements and declared the income from rents received from the property on his federal income tax returns. Terry Giecek supplied no similar evidence of his contributions to the upkeep and improvements at 103 Elizabeth Street. Thus, the parties' conduct after 1989 squares with their recognition that John Giecek was the sole owner of 103 Elizabeth Street. Indeed, Terry Giecek acknowledged that John Giecek paid Terry's son to cut grass at 103 Elizabeth Street.

Third, Mark Giecek credibly testified that he and Terry Giecek were both paid and both signed the deed over to John Giecek for the property. Though Mark Giecek did not see his brother John physically hand cash to his brother Terry, Mark did witness Terry sign a deed transferring his interest to John. Circumstantially, this court concludes that Terry would not have signed the deed without having

contemporaneously received payment from his brother John.

Trial Court Opinion, filed Nov. 3, 2023, at 1-2 (citations to record omitted).

The trial court concluded that over 30 years ago John paid Terry for Terry's share of the Elizabeth Street Property. *Id.* at 3. It further found that the statute of frauds did not preclude an order of specific performance here because the requirements for the exception to the statute of frauds had been met. *Id.* at 4. The court found John had paid Terry in full for the interest in the property, John had exclusively and continuously controlled and maintained the property since that time, and Terry's conduct supported the conclusion he understood John was the sole owner. *Id.* The court found recission of the agreement would be inequitable and unjust. *Id.* at 5. The court ordered Terry to execute a quitclaim deed conveying his right, title, and interest in the property to John. *Id.* at 6.

The court denied John's request for counsel fees, noting the American rule applied and no exception to the rule applied in this case. *Id.* at 5. John filed a post-trial motion arguing, in part, that the court erred in denying counsel fees and citing ***Barnett v. Reed***, 51 Pa. 190 (1865). The court denied the motion. John timely appeal.

John raises the following issue: "Whether the lower court erred in its application of the law to the facts of the case and failed to award attorney fees pursuant to ***Barnett vs. Reed***, 51 Pa. 190, 192-93 (1865)?" John's Br. at 4.

John cites **Barnett** for the proposition that "[v]indictive damages may be awarded where there is actual malice, to punish the defendant." **Id.** at 6 (quoting **Barnett**, 51 Pa. 190). John points out that the lawsuit he filed to obtain the disputed property was successful, but the trial court denied his request for counsel fees. He argues Terry wasted everyone's time, including the court's time. He argues "[t]here [was] clear actual malice in [Terry] receiving money and yet refusing, over the course of twenty (20) years, to sign a deed and requiring his brother to take him to court." **Id.** at 7. John further states that Terry's counsel advised John not to rent the property and "not to have anything to do with the house," which allegedly caused John to lose $800 a month in rent. **Id.** He notes that a third brother, Mark, "had no qualms about admitting he was paid and witnessed [Terry] signing the receipt and both were given the $2,700.00 at the same time." **Id.**

John further argues the court erred in not awarding counsel fees under the American rule. He notes that under the American rule, each party is responsible for paying his or her counsel fees, unless otherwise permitted by a contractual or statutory authority or grounds in equity. He maintains that "[c]learly there is no clearer case in equity than the case before this court." **Id.** at 8.

John points out that Terry testified that the last time he had done work on the property was in 1989 and that Terry had never paid taxes or insurance toward the property, or claimed any expenses or deductions for the property on his income tax filings. **Id.** Further, John's name was the only name on the

insurance policy for the property. John emphasizes that before trial he discovered a receipt memorializing the understanding of the transaction. The brothers had signed two separate receipts setting forth the understanding, which corroborated Mark and John's statements.

John concludes that he "chased [Terry] through twelve years of litigation to obtain property for which [Terry] was rightfully paid." *Id.* at 11. Terry refused to sign and maintained he had not been paid, yet did not help maintain the property. John argues grounds in equity exist to award counsel fees.

John relies on two separate theories to support his claim for counsel fees. First, he relies on *Barnett*. In *Barnett*, the plaintiff had initiated an action for the malicious abuse of legal process. There, the court stated that because the debt had been paid before the entry of judgment, the judgment and execution were nullities. It found that "[i]f a party issuing execution on a judgment for a debt which had been paid upon its entry, knew it had been paid, he is liable for an action for malicious abuse of legal process, whether he caused the judgment to be entered or not." *Barnett*, 51 Pa. at 190. It stated that compensatory damages were proper where there was not actual malice but that "[v]indictive damages may be given where there is actual malice, to punish the defendant." *Id. Barnett* explained that counsel fees were among the compensatory damages available in such a case: "Compensatory damages are proper where there is no actual malice and are such as indemnify the plaintiff, including injury to property, loss of time and necessary expenses, counsel fees, and other actual loss." *Id.*

- 5 -

Second, John claims this case satisfies an exception to the American rule. "Under the American [r]ule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 976 A.2d 474, 482-83 (Pa. 2009).

The trial court found that counsel fees were not proper under *Barnett*. The trial court found *Barnett* distinguishable because in *Barnett* the plaintiff pursued a malicious use of process claim, and in this case John pursued a breach of agreement claim. Trial Court Opinion, filed Feb. 13, 2024, at 5-6. The court noted that the Pennsylvania Supreme Court had found that punitive damages are not available in contract actions. *Id.* at 6. The court found that John successfully pleaded and proved his right to specific performance of an oral agreement for the sale of real property and, because he sought a contractual remedy, he may not recast his claim to be one of malicious prosecution. *Id.* at 7.

The trial court further found an award of counsel fees not proper under the American rule. *Id.* at 4-5. It noted that under the American rule, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authority, a clear agreement between the parties, or some other established exception. It found none of the exceptions applied here.

We agree with the trial court. *Barnett* does not apply, as John did not sue for malicious use of legal process. *See Chatham Commc'ns, Inc. v.*

***Gen. Press Corp.***, 344 A.2d 837, 842 n.4 (Pa. 1975) (limiting ***Barnett***'s allowance of counsel fees to actions for malicious abuse of process). Further, John has not established an exception to the American rule regarding counsel fees exists here.

Judgment affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/06/2024