**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 10 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

METROPLEX CORPORATION,

      Plaintiff - Appellant/
      Cross-Appellee,

v.

THOMPSON INDUSTRIES, INC.,

      Defendant - Appellee/
      Cross-Appellant.

Nos. 00-4183, 00-4200, 01-4003
(D.C. No. 98-CV-772-B)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR** and **HENRY**, Circuit Judges, and **OBERDORFER**, District Judge.[**]

Metroplex Corporation ("Metroplex") appeals various portions of two summary judgment orders in its suit against Thompson Industries, Inc. ("Thompson"). In 1996, Thompson contracted with Metroplex to provide railroad ties for a rail line construction project Metroplex had undertaken for the U.S. Army. Metroplex subsequently

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgement may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]     The Honorable Louis F. Oberdorfer, United States District Judge for the District of the District of Columbia, sitting by designation.

determined that many of the ties were defective, prompting it to bring common-law contract and tort claims against Thompson. The district court resolved various issues through separate orders, largely in Thompson's favor. The parties ultimately settled the case. This appeal presents four issues peripheral to that settlement: whether the district court erroneously (1) interpreted the contract to preclude Metroplex from recovering attorneys' fees incurred in this action; 2) denied Metroplex a jury trial on its punitive damages claims; 3) sanctioned Metroplex's counsel for writing a complaining letter to the court about certain proceedings; and 4) in a cross-appeal filed by Thompson, found the name of a witness identified on a Metroplex document to be protected by the attorney-client privilege and thus properly redacted. We conclude that the district court did not err and we affirm its disposition of all four of these peripheral issues.

## I.

By way of background, the pleadings that serve as the basis of the substantive settlement yield the following undisputed facts: Metroplex builds, repairs and refurbishes railroad systems and related equipment. Thompson is a merchant and distributor of wood products, including railroad ties used for the building, repair, and rehabilitation of railroad systems. Metroplex contracted with the United States Army to build and repair railroad track at the Tooele Army Depot in Tooele, Utah. That contract, entered into on August 29, 1996, required Metroplex to complete the project by May 30, 1998, consistent with various specifications regarding the materials. The contract provisions were subject to

interpretation under Pennsylvania law.  On December 13, 1996, Metroplex contracted to purchase from Thompson approximately 51,000 cross-ties and switches for use in building and repairing the tracks at Tooele.

According to Metroplex,  the railroad ties delivered by Thompson pursuant to the contract were nonconforming and defective in that they were the wrong species of wood and were improperly treated, hampering the railroad construction process and generating extra costs.  Accordingly, on March 27, 1998, Metroplex sued Thompson in the Western District of Pennsylvania, alleging breach of contract, fraud, breach of express and implied warranties, and negligence.  Metroplex sought punitive damages on the theory that Thompson's alleged misconduct was deliberate, or at least reckless.  The case was subsequently transferred to the District of Utah, a more convenient forum.  There Thompson counter-claimed against Metroplex and filed third-party complaints against Western Railroad Builders and its rail-tie inspector, A.W. Williams Inspection Company. Metroplex also sued A.W. Williams for breach of contract under a third-party beneficiary theory and for negligence.[1]  The parties ultimately resolved their substantive dispute, formalizing their settlement in a consent judgment which the district court entered on November 22, 2000.  Under the terms of the consent judgment, Thompson agreed to pay Metroplex $254,000, although Thompson made no concession of liability.  Both parties

---

[1]     A.W. Williams was dismissed from these proceedings through a joint stipulation, and the district court ruled – and Thompson conceded – that Western Railroad Builders had been sued in error.  Neither of these parties is participating in this appeal.

reserved the right, notwithstanding settlement, to pursue issues relating to punitive damages, lost profits, attorneys' fees, and any discovery and evidentiary issues. Prior to the entry of the consent judgment the district court entered two orders on February 24, 2000 and September 26, 2000, each of which generated two of the issues now before us on appeal.

First, the February 24 order determined that the contract did not obligate Thompson to pay attorneys' fees incurred by Metroplex in prosecution of this litigation. See II.A, infra. The February 24, 2000 order also denied Thompson's motion to compel Metroplex to disclose the names of certain individuals identified on, but redacted from, handwritten notes made by a Metroplex employee, Robert Bashioum. Bashioum had taken the notes while discussing the case with a Metroplex attorney. The district court ruled that the redacted portion of the notes was protected by the attorney-client privilege, because the employee took them in the course of obtaining legal advice. Thompson has cross-appealed on this issue. See II.D, infra.

On September 26, 2000, the district court entered the second order involved in this appeal, a denial of Metroplex's claim for punitive damages. Thompson had filed a "motion for directions on punitive damages and speculative damages or in the alternative for partial summary judgment," claiming that it could not be held liable for punitive damages. The district court treated the motion as one for summary judgment and concluded that Thompson could not be made to pay punitive damages to Metroplex. The

4

court essentially held that this was a "simple contract case," in which punitive damages are not available. Metroplex raises this foreclosure of punitive damages as the third issue on appeal. See II.B, infra.

The fourth issue on appeal, also arising from the district court's September 26 order, relates to the events surrounding the disposition of Metroplex's punitive damages claim. On June 15, 2000, after a hearing on Thompson's damages motion, Metroplex's attorney, Dan Hull, wrote a letter to the district court complaining about the manner in which the damages issue had developed. Thompson objected to the letter and filed a motion for sanctions. The September 26 order granted the motion for sanctions.

On September 28, 2000, the parties entered into a settlement agreement that Metroplex claims expressly permits appeal of the district court's orders of February 24 and September 26. Metroplex filed its notice of appeal on October 24, 2000, before any final judgment was entered in the case. On November 20, 2000, Thompson moved to dismiss Metroplex's appeal on the ground that the district court's two orders were not final and appealable and had not been certified as such pursuant to Federal Rule of Civil Procedure 54(b). The consent judgment, incorporating the September 28 settlement agreement, was entered two days later, on November 22, 2000, and signed by the district court. Metroplex claims the two orders that it seeks to appeal were made final and appealable by virtue of this consent judgment, as it brought to an end all pending claims involved in the litigation. Federal Rule of Appellate Procedure 4(a)(2) provides that a

5

notice of appeal filed after disposition of the case but prior to the entry of judgment "is treated as filed on the date of and after the entry" of judgment. FED. R. APP. P. 4(a)(2). Jurisdiction therefore exists to hear and resolve this appeal.

## II.

A.      Recovery of Attorneys' Fees

The focus of the dispute over whether the contract between Metroplex and Thompson provided for Metroplex's recovery of attorneys' fees arising from this lawsuit is Paragraph 11 of the Terms and Conditions of the Purchase Order, the relevant portion of which provides:

> Responsibility and Indemnification. By its acceptance of this Purchase Order, Seller [Thompson] agrees it will hold and save harmless Buyer [Metroplex] (and/or any of its affiliated companies) of and from any and all liability, loss, damages, costs and expenses (including attorney's fees), claims, suits and demands and from damage to property or injuries, including death to persons sustained by Buyer, its employees or its customers, or by Seller or its employees, or by any other party, arising out of the performance of any work or the furnishing of any item or material by Supplier [Thompson] under this order. Seller further expressly agrees that it is the intent hereof that Seller shall assume all risk of such loss, damage or injury, and shall save harmless Buyer from any judgment, liability, or expense arising out of any law suit brought by a third party on any cause of action in any way arising out of or related to the above said performance of work or furnishing of any item or material. . . . Seller further agrees at its own expense, to defend any suit or action against buyer or user of the material covered by the purchase order for alleged patent infringement arising from the sale or use of said material, and to indemnify and save Buyer harmless from any loss, liability, cost and expenses (including attorney's fees) in connection with any such suit or action.

(emphasis added). The parties filed cross-motions for summary judgment on whether this language permitted Metroplex to recover attorneys' fees arising out of the present

6

litigation. In granting summary judgment to Thompson, the district court concluded that the contract unambiguously precluded Metroplex's recovery of attorneys' fees for this case. We review the district court's summary judgment order de novo. See Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238 (10th Cir. 1990).

The district court recognized that the first sentence of the contract provision was ambiguous when considered in isolation, in that it could reasonably be interpreted as either an indemnification clause limiting Metroplex's recovery of attorneys' fees to third-party lawsuits or a provision covering any losses sustained by Metroplex as a result of the delivery of nonconforming goods, including attorneys' fees. In light of this "alleged ambiguity," the court "resort[ed] to a second level of contract interpretation, looking at the first sentence in context of the four corners of the document." 2/24/00 Order at 6. Applying this method, the court concluded that "the language of the entire contract is clear and unambiguous, and it is unnecessary to look to any extrinsic evidence." 2/24/00 Order at 7 (citing First Home Savs. Bank, FSB v. Nernberg, 648 A.2d 9, 14 (Pa. Super. 1994) (stating that "when the language of a contract is clear and unequivocal, courts interpret its meaning by its contents alone, within the four corners of the document")); see also RESPA of Pa., Inc. v. Skillman, 768 A.2d 335, 340 (Pa. Super. 2001) ("When the language of a contract is unambiguous, we must interpret its meaning solely from the contents within its four corners, consistent with its plainly expressed intent.").

7

Specifically, the district court noted that the first two sentences of Paragraph 11 "used contractual indemnification language, 'hold and save harmless,' which leads one to believe the entire paragraph is dealing with indemnification." 2/24/00 Order at 6. Also, the court noted that the title of the paragraph "plainly states 'Responsibility and Indemnification,'" indicating that the entire paragraph is an indemnification provision. The district court concluded that the only reasonable interpretation of the contract was that it unambiguously obligated Thompson to pay attorneys' fees to Metroplex only in the context of third-party suits against Metroplex.

On appeal, Metroplex argues the contract is unambiguous and expressly provides for the recovery of attorneys' fees in this action, based on the language in the first sentence of Paragraph 11 that Thompson must pay for "any and all liability . . . arising out of the performance of any work or the furnishing of any item or material by Supplier under this order." Thompson counters that Paragraph 11 unambiguously applies only to actions for indemnification.

Paragraph 11 does not provide unambiguous support for the recovery of attorneys' fees. As Thompson points out, various aspects of Paragraph 11 support its argument that the provision applies only to actions for indemnification. Not only is the paragraph entitled "Responsibility and Indemnification," but the first, second, and last sentences use the traditional indemnification language, "save and hold harmless Buyer." Use of the word "further" in the second sentence implies that sentence is a continuation of the

8

previous one, and the second sentence clearly contemplates indemnification for third-party claims – as indicated by the express reference to a lawsuit "brought by a third party." The paragraph by its plain terms cannot be construed as a contract to pay attorneys' fees in the event of a contract dispute between the buyer and the seller.

In the alternative, Metroplex contends that the language is ambiguous and creates a material issue of fact. Therefore, the district court should have permitted the admission of extrinsic evidence and submitted the matter to a jury. Metroplex's alternative argument is unavailing in light of the American Rule on attorneys' fees. Pennsylvania has adopted the American Rule, providing that no attorneys' fees are allowable or awardable in the absence of a clear contractual provision, statute, or other applicable exception. As stated by the Pennsylvania Supreme Court, "This Court has consistently followed the general, American rule that there can be no recovery of attorneys' fees from an adverse party, absent an express statutory authorization, a clear agreement by the parties or some other established exception." Merlino v. Delaware County, 728 A.2d 949, 951 (Pa. 1999) (citing Chatham Communications, Inc. v. Gen. Press Corp., 344 A.2d 837, 842 (Pa. 1975)). Even assuming that Metroplex is correct and the phrase "any and all liability" in the first sentence of Paragraph 11 encompasses attorneys' fees resulting from litigation between the contracting parties, this language would conflict with the indemnity language in the same paragraph and render the provision ambiguous. Under the American Rule adopted by Pennsylvania's highest court, recovery of attorneys' fees is

prohibited as a matter of law in the absence of an <u>unambiguous</u> contractual provision. Metroplex is not entitled to attorneys' fees.

B.      <u>Punitive Damages</u>

Metroplex challenges the district court's partial summary judgment decision denying its claim for punitive damages. The company's complaint alleged breach of contract as well as tort claims of fraud and negligence.

Under Pennsylvania law, an injured party may recover punitive damages in tort. <u>See, e.g.</u>, <u>Burke v. Maassen</u>, 904 F.2d 178, 181 (3d Cir. 1990). "As a general guide in this area Pennsylvania recognizes the principles set forth in Section 908(2) of the Restatement of Torts (Second): 'Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause and the wealth of the defendant.'" <u>Martin v. Johns-Manville Corp.</u>, 494 A.2d 1088, 1096 (Pa. 1985) (quoting REST. 2D (TORTS) § 908(2)). Punitive damages are not awarded as a matter of course. "The imposition of damages to punish a civil defendant is appropriate only where the conduct is egregious." <u>Field v. Philadelphia Elec. Co.</u>, 565 A.2d 1170, 1183 (Pa. Super. 1989). "Plaintiffs must show outrageous conduct by a preponderance of the evidence." <u>Hughes v. Consol-Pennsylvania Coal Co.</u>, 945 F.2d 594, 616 (3d Cir. 1991).

On March 24, 2000, the district court asked both defendants to file motions in the nature of partial motions for summary judgment on the issue of whether the punitive damages claim could be maintained in this lawsuit. The district court noted that under Pennsylvania law "punitive damages are not available for a 'breach of mere contractual duties.'" 9/26/00 Order at 8 (quoting Daniel Adams Assoc. v. Rimbach Publ'g Inc., 429 A.2d 726, 728 (Pa. Super. 1981)). Viewing the facts in the light most favorable to Metroplex, the district court found "that as a matter of Pennsylvania law punitive damages are not recoverable in this simple contract case." 9/26/00 Order at 9. In support of this conclusion, the district court observed that Metroplex, upon receiving the nonconforming rail ties, revoked its acceptance as permitted by Pennsylvania law. See 13 PA. CONS. STAT. ANN. § 2-608 (providing that a buyer may revoke its acceptance if the "acceptance was reasonably induced either by the difficulty of discovery before acceptance or by assurances of the seller"). In addition, Metroplex's tort claims were, as the district court found, resolved according to contract principles that ultimately allowed Metroplex to fulfill satisfactorily its contract with the Army. Established principles of Pennsylvania law preclude award of punitive damages on a simple breach of contract claim such is at issue here.

The court's ruling can be read as either a determination that Metroplex's action was centrally one for breach of a contract, to which the pled tort claims were extraneous, or an effective determination that Thompson's conduct was not sufficiently egregious to

11

warrant punitive damages. Metroplex contends, however, that the district court erred by issuing an order that, if the case had proceeded to trial, would have allowed the jury to consider its fraud and negligence claims but prevented the jury from considering its corresponding punitive damages claims. Although the district court's decision to resolve the punitive damages issue itself, rather than leaving the issue for a jury, is mildly problematic, there is no reversible error here.

Pennsylvania law precludes the award of punitive damages unless and until a plaintiff proves an underlying tort. "In this Commonwealth '[t]he right to punitive damages is a mere incident to a cause of action--an element which the jury may consider in making its determination--and not the subject of an action in itself.'" Feingold v. Southeastern Pennsylvania Transp. Auth., 517 A.2d 1270, 1276 (Pa. 1986) (quoting with approval Hilbert v. Roth, 149 A.2d 648, 652 (Pa. 1959) (citations omitted)); see also RESTATEMENT (SECOND) OF TORTS, § 908, Comment c ("It is essential ... that facts be established that, apart from punitive damages, are sufficient to maintain a cause of action."). The district court correctly found that Pennsylvania law does not permit the recovery of punitive damages in contract-related situations, and Metroplex's claims are predominately contract-based. As the district court noted, the allegedly tortious conduct by Thompson's employees, including knowingly falsified certificates of compliance for non-conforming ties, were corrected through the parties' resort to "flexible contract principles." 9/26/00 Order at 9-10. In light of Metroplex's successful use of contractual

12

remedies to ensure Thompson's performance under the contract, we do not disagree with the district court's implicit conclusion that the tort claims pled by Metroplex were superfluous to its action for breach of contract. Accordingly, we affirm the district court's decision to deny the Metroplex punitive damages claim.

C.      Sanctions for the "ex parte" letter

We review the district court's decision to levy sanctions pursuant to FED. R. CIV. P. 11 for abuse of discretion, see Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990), and we affirm the district court's sanction of plaintiff's counsel for the letter to chambers.

Following the June 6 hearing on the punitive damages issue, the Metroplex attorney wrote a letter to the court on June 15, 2000 to express his dissatisfaction with the court's handling of the issue. The letter was copied to counsel for Thompson and A.W. Williams. Both defendants subsequently moved for sanctions on the basis of the letter, which the district court granted.

The district court noted that the attorney's letter "clearly violated several local rules and the Federal Rules of Civil Procedure," although it did not specify which rules had been transgressed. 9/26/00 Order at 15. The district court ordered plaintiff's counsel to "refrain from any further ex parte contact with the Court," assessed costs incurred by Thompson in bringing the motion for sanctions, and struck the letter and its exhibits. Id.

13

Metroplex claims the imposition of sanctions was in error. It argues that the letter was not an ex parte communication, since all parties were copied on it; the district court failed to cite any specific ethical violations; and the letter was compelled by the possibility that the court would treat the damages motions as summary judgment motions. Metroplex now describes the letter, post-hoc, as a "motion to reconsider."

Thompson argues that the letter was "offensive" and violated several rules in the Utah Rules of Professional Conduct, including Rule 3.5(a), which prohibits a lawyer from seeking to influence a judge by means prohibited by law, and Rule 3.4, which requires fairness to opposing counsel.

While it would have been helpful for the district court to pinpoint the ethical rules that serve as the basis for sanctions, the letter was undeniably inappropriate. Metroplex's attorney should have taken the proper route of filing a formal motion for reconsideration, rather than sending an ill-advised letter to chambers. The district court's ruling on this issue was within its discretion, and the sanctions stand.

D.    Attorney-Client Privilege

Thompson cross-appeals, seeking the disclosure of the identity of a potential witness who made certain statements regarding Thompson's finances. At his deposition, Robert Bashioum, senior project manager for Metroplex, refused to identify an individual whose name had been redacted from his personal diary at the advice of counsel. The notes were apparently made during a conversation between Bashioum and counsel for

14

Metroplex. The relevant portion states, "Summary of Thompson financial investigation. Talked to ___ last night – Harry Scott erratic – Tony is trying to leave the ___."

On January 3, 2000, a magistrate judge denied Thompson's motion to compel on the basis of attorney client privilege. "In order to be covered by the attorney-client privilege, the communication between a lawyer and client must relate to legal advice or strategy sought by the client." United States v. Johnston, 146 F.3d 785, 794 (10th Cir. 1998). The magistrate judge concluded that Thompson had not established that the redacted names were unrelated to the provision of legal advice or development of legal strategy. The district court's February 24, 2000 order found that because the information sought by Thompson arose during a meeting with Metroplex's attorney, it fell within the attorney-client privilege.

It is not necessary to resolve this issue on appeal. The identity of the potential witness is important only if we reverse and remand the district court's ruling on punitive damages, given that Thompson is seeking the disclosure of this individual's identity as a potential trial witness on that specific issue. Our decision to affirm the district court on the punitive damages issue renders the disclosure of the potential witness's identity unnecessary for our purposes and moots the issue.

For the foregoing reasons, we AFFIRM the district court.

Entered for the Court


Louis F. Oberdorfer
District Judge